Entered on Docket
November 13, 2013
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: November 12, 2013



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                               ) Bankruptcy Case
                                    ) No. 12-31524DM
GIRA POLLI OF MILL VALLEY, LP,      )
                                    )
                   Debtor.          ) Chapter 11
_____)
```

MEMORANDUM DECISION REGARDING
VALUATION OF REAL PROPERTY

I. INTRODUCTION

On October 31, 2013, the court held a trial in this Chapter 11 case, the sole purpose of which was to determine the value of real property (the "Property") owned by Gira Polli of Mill Valley, LP ("Debtor"), the principal asset in this case. Appearances were noted in the record.

After considering the appraisal reports by John C. Clifford ("Clifford"), testifying on behalf of Sterling Savings Bank, Kevin Watkins ("Watkins"), testifying on behalf of Debtor, and Dorine Ferrante ("Ferrante"), Debtor's principal who submitted her own report, the court finds that the value of the Property for purposes of this Chapter 11 case is $1,832,430.

## II. DISCUSSION[1]

The two appraisers agree on a number of things, including their definition of fair market value, their conclusion as to the highest and best use of the Property, and other matters. They disagree, however, on some very critical points that affect the valuation outcome. In the discussion that follows, the court reconciles those disagreements in order to come up with a firm valuation.

In some respects Ferrante takes an even more aggressive approach than Debtor's own expert Watkins, but the court discounts much of her testimony because it exceeds her qualification as the representative of the owner to opine on the value of the Property. Further, a considerable portion of her declaration and report contains a criticism of Clifford and of Sterling Savings Bank, and also includes a defensive argument as to Ferrante's own business experience and ethics, neither of which is in question and neither of which has any bearing on the value of the Property. Ferrante's bottom-line conclusion as to the value has been rejected, but her report offers some factual support for positions the court adopts. It reaches the value of the Property primarily by an examination and evaluation of the differing positions taken by Watkins and Clifford.

The points of disagreement which the court must reconcile are as follows:

 1. <u>Square footage of the building on the Property for appraisal purposes</u>

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

It is surprising to the court that there is so much uncertainty about a critical element of the valuation process, namely the square footage of the building on the Property for appraisal purposes. Clifford says the correct figure is 2,146 square feet, based upon his belief that the usable interior of the building plus the enclosed patio is 2,146 square feet. He does not consider a storage shed that takes up another 111 square feet.

Watkins uses a flat 2,500 square feet without showing how those figures break down. That figure is if little help. Ferrante explains the 354 square foot difference between the two appraisers by adding the storage shed (111 square feet) and the hollow exterior walls and corners (referred to by the parties as the fins and buttresses) (another 150 square feet). That total of 261 square feet leaves 93 square feet unaccounted for.

The court believes the proper approach is to take the interior usable area shown on several drawings as 1,963 square feet (51.0 feet length x 38.5 feet width = 1,963 square feet) plus the enclosed patio of 195 square feet. That produces a subtotal of 2,158 square feet. Giving the benefit of the doubt to the Debtor that the storage shed should be included (as Watkins did) brings the total to 2,269 square feet.

In reaching this result the court rejects Watkins' own view that it is appropriate to use the external measurements that include the 150 square feet Ferrante says is taken up by the fins and buttresses. Clifford's "common sense" approach make more sense. While the fins and buttresses clearly have an aesthetic quality, they do not constitute any usable lease area for purposes of calculating a rental value or a square foot multiplier for a

Case: 12-31524   Doc# 185   Filed: 11/12/13   Entered: 11/13/13 08:17:17   Page 3 of 7

sales price estimate, and are therefore disregarded. So too is the unexplained 93 square feet that appear in Watkins' appraisal.

2. <u>Annual rental rate per square foot</u>

Clifford believes a proper rental rate is $3.80 per square foot, whereas Watkins believes $4.50 would be appropriate.[2]

The $.70 per square foot difference between the two experts has a significant effect on the ultimate valuation. Having considered the comparables used by both, the court finds Watkins' to be more appropriate. That being said, only one of them is an actual triple net lease in place at the $4.50 per square foot rate that he concludes to be suitable for the Property. Admittedly he adjusts that comparable by a total of 10% for various factors, but the lower figures as adjusted for existing leases, and two based upon triple net listings which are adjusted to $4.51 and $4.24 respectively, suggests that Watkins' approach is more aggressive than seems correct under these circumstances. Accordingly, the court will use an annual rental rate of $4.25 per square foot.

3. <u>Comparable sales to determine value per square foot</u>

Both experts comment on how little activity there is in the Mill Valley area and how it is so difficult to find comparables. Still, Watkins found four sales and one listing and Clifford found seven sales. Yet there were only two properties that both used. So much for "comparable." One Watkins used, comparable No.1, is a sale over 2-1/2 years ago for $12,500,000. While Watkins did make adjustments based upon size and time, the court finds it hard to

---

[2] Ferrante argued for a higher rate but the court does not believe she possesses the requisite qualifications as an expert to opine on that subject specifically.

-4-

imagine that such a sale could even qualify to begin with as a comparable. The other three comparable sales were between $484 a square foot and $524 a square foot, and the Property is adjusted to a range of $776 and $813, again with a large component being based upon time although admittedly there are other subjective adjustments that Watkins makes.

Clifford's comparables are not as convincing. Thus the court believes Watkins' use of a $800 per square foot comparable sales figure is more appropriate. His adjustments to comparables 2, 3 and 4, much of which is based on time, are more credible. Based on the court's use of 2,269 square feet, that would produce a value of $1,815,200 based upon comparable sales.

    4. <u>Comparable rentals to be used to determine valuation via income approach</u>

The court believes the income approach here is much more appropriate. Even though Debtor is operating its business at the Property, and is not leasing it to a third party, nevertheless for a commercial enterprise of this nature a valuation determined by what an investor might be willing to pay on the assumption that an operator such as Debtor would be at the Property, seems right under the circumstances.

Based upon the foregoing, the court extrapolates the value of $1,832,430 based upon 2,269 square feet rentable at $4.25 per square foot on a triple net basis, as set forth here:

| | |
|---|---|
| Building size - Square feet | 2269 |
| Rent per square foot per year | $4.25 x 12 = $51 |
| Projected income per year | $115,717 |

Case: 12-31524    Doc# 185    Filed: 11/12/13    Entered: 11/13/13 08:17:17    Page 5 of 7

| | |
|---|---|
| Vacancy - assume 5% because both experts agreed | -$5,785.85 |
| Effective gross income | $109,931.15 |
| Property management - 5% because both experts agreed | -$5,496.55 |
| Reserve 1.2375%(split between Clifford and Watkins' lower percent) | -$1,360.39 |
| Total expenses | -$6,856.94 |
| Net operating income | $103,074.21 |
| Capitalization rate (split between Clifford and Watkins) | 5.625% |
| Indicated Value | $1,832,430 |
| Comparison with sales approach | $1,815,200 |

III. CONCLUSION

    Counsel for Debtor should prepare and serve a proposed order fixing the value of the Property for all purposes in this Chapter 11, and in particular for purposes of the extant motion to value liens and for purposes of any attempt by Debtor to prime the exiting liens on the property.

                    **END OF MEMORANDUM DECISION**

|   |   |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | Barbara Finnigan |
|   | 1080 Macadamia Drive |
| 3 | Hillsborough, CA 94010 |